## Case No. 16,680.

### UNITED STATES v. WHITE.

[Hoff. Op. 475; Hoff. Dec. 25, 95.]

District Court, N. D. California. April 15, 1861.

MEXICAN LAND GRANT — CONFIRMATION OF PROCEEDING— RIGHT TO INTERVENE.

[One whose claim under a grant has never been presented, and has been abandoned, has no right, under Act 1851, § 13. to intervene in a proceeding to confirm a different grant, until after the determination of the proceeding by the confirmation of the claim.]

[This was a claim originally presented by Charles White for the rancho called the "Arroyo de San Antonio," in Sonoma county, granted August 10, 1840, by Juan B. Alvarado

to Antonio Ortega, and confirmed by the commission June 26, 1855, by the district court August 17, 1857, and decree reversed by supreme court. 23 How. (64 U. S.) 249. On the death of said White, Ellen E. White, administratrix, was substituted. Now heard on motion by persons claiming under Miranda for leave to intervene.]

HOFFMAN, District Judge. The claim in this case was confirmed in the district court, and an appeal taken to the supreme court. The order made in that court was that the decree appealed from be set aside and annulled, and the cause remitted for further proceedings. Among the proofs relied on by the United States, to show the invalidity and even the fraudulent character of the grant, was a grant for the same land to one Juan Miranda. A claim under this grant had been presented to the board, but was abandoned by the petitioner on his motion, and his claim withdrawn, and the land is, therefore, to be deemed public land, unless the present claimant can establish the validity of the grant under which he claims.

In the opinion of the supreme court, as reported [23 How. (64 U. S.) 249], it is said: "It is clear from the evidence in this case, that as against the United States either Ortega or Miranda has a just claim to a confirmation of his title to the tract in dispute; but whether Ortega was landlord, and Miranda his tenant, or which of the claimants has attempted to overreach the other, are questions in which the government has no interest. The United States officers are not bound to settle this dispute between these parties in these proceedings, nor should either party be permitted to carry on this litigation by assuming to act for the government, and thus take the advantage of their opponents by fighting under its shield and at its expense. The district attorney had neither interest nor authority to represent Miranda in order to defeat Ortega; nor can this court be compelled, on an appeal by the attorney general, to become the arbiters of disputes in which the government has no concern. * * * The act of congress points out the mode in which contesting claimants may litigate their respective right to a patent from the government. Instead of appeal from this court to settle the rights of Miranda in a proceeding to which he is no party, the claimants under him, if there be any, should proceed in the mode pointed out by the act, which provides, 'that,' " etc. The provisions of the thirteenth section of the act of 1851 [9 Stat. 633] are then recited, and the court after some further observations on the case, declares that it will not affirm the decree "of the district court for it might then appear that it had decided the title of Ortega to be superior to that of Miranda; nor reverse it, for that would imply that it considered Miranda to have the better title." It therefore determined to remand the

record, with directions to suspend proceedings until Miranda could have an opportunity to contest the claim of Ortega, under the provisions of the thirteenth section of the act of 1851. At a subsequent day, the court, having reconsidered this order and opinion, ordered "that the decree of the district court be reversed, and the record remanded for further proceedings; and it declares that this last order is made that the district court may not be trammelled in its future consideration of this case, in all its merits, but without intimating an opinion as to the validity of the grant to Ortega." The mandate having been filed in this court, a motion is now made in behalf of parties claiming under Miranda, for leave to intervene and assert his rights.

Under all the previous rulings of this court, and of the supreme court, in this class of cases, such a motion must clearly have been denied. In the case of U. S. v. Fossatt, the supreme court says: "It is the opinion of this court, that the intervention of adversary claimants in the suit of a petitioner under the act of March, 1851, for the confirmation of his claim to land in California, is a practice not to be encouraged. * * * The language and policy of these enactments limit a controversy like the present to "the United States and the claimant." 20 How. [61 U. S.] 425. Many other decisions might be quoted in which similar language is used. But it is thought that the opinion of the supreme court in this particular case recognized the right of Miranda to intervene and assert his rights; that in the opinion first delivered, but subsequently reconsidered, it seems to have been assumed that Miranda could intervene, under the thirteenth section of the act of 1851, is not denied. But the same opinion expressly declares that except in that way, he has no right to appear, or even be represented by the district attorney. "The United States officers are not bound," says the court, "to settle this dispute between these parties in these proceedings. The district attorney had neither interest nor authority to represent Miranda, in order to defeat Ortega, nor can this court be thus compelled, on an appeal by the attorney general, to become the arbiters of disputes, in which the government has no concern." It cannot be supposed that the court, when holding such language, intended that this court, by allowing Miranda to intervene and assert his claim, should hear and decide the very dispute in which it says the government has no interest, and which its officers are not bound to settle. But even if Miranda's intervention were permitted, what purpose could be served? His claim has long since been abandoned, and must be treated as if never presented. The statute declares that "all lands, the claims to which have been finally rejected, and all lands, the claims to which shall not have been presented, shall be deemed, held, and considered as part of the public domain of the United States." So far, then,

as Miranda is concerned, the land must be treated as public land.

The only question in the present case which ever has been or ever could be presented to the board or to this court, is: Did Ortega obtain a valid grant from the Mexican government? The controversy, as is said by the supreme court in U. S. v. Fossatt [supra], is limited to the United States and the claimant. How, then, can the court in this suit, which relates exclusively to Ortega's grant, permit Miranda to assert an utterly different and inconsistent claim which has long since been barred by the statute. Can this court, in a suit between Ortega and the United States, enter a decree in favor of Miranda? Such a proceeding appears to me wholly inadmissible. It is true that the district attorney did take testimony to prove that the land claimed in this suit by Ortega had been granted to Miranda, but the motive for making this proof seems not to have been fully appreciated by the supreme court. "It (the government) cannot," says the court, "set up Miranda to defeat Ortega, or the contrary; admitting as they must that either of them can show a claim worthy of confirmation in the absence of the other." But this (with great deference) is precisely what the government does not admit. Miranda's claim has been abandoned and the rights under it lost. The district attorney did not act as the representative of Miranda, or with any view of enforcing his rights. But alleging the grant to Ortega to be fraudulent and spurious he sought to show, in proof of that allegation, that one Juan Miranda had obtained a grant for the same land. And that the occupation was that of Miranda, under a grant to himself, and not as tenant of Ortega.

Certainly these facts, if established by proofs, afford strong evidence to show that Ortega did not obtain his pretended grant, and whether he did or not is the only question to be determined in this proceeding. In this view the United States have a direct interest in the proceeding; for, independently of the general duty of the government, through its officers, to expose and defeat every fraudulent claim, whether the land claimed will ultimately belong to the United States, or to some Mexican grantee, it has here the additional motive for defeating Ortega's claim, furnished by the fact that it is the only one which covers the land in question,—Miranda's having been withdrawn, and all others having been barred by the statute. I cannot perceive, therefore, why the introduction by the district attorney of proof of the grant to Miranda, and his occupation under it, and not under Ortega's alleged title, was not in all respects pertinent and proper. But the court seems also to have considered that Miranda could intervene in the proceeding under the thirteenth section of the act of 1851, and in the opinion just delivered, it declines either to reverse or affirm the decree of this court but remands the cause with directions to suspend proceedings until he can

have an opportunity to do so. The section in question undoubtedly authorizes any person contesting the title of the claimant to present a petition to the district judge, setting forth his title; and the judge is empowered to enjoin the party, at whose instance the claim has been confirmed from serving out a patent for the same until the title thereto shall have been finally decided, etc. But it is clear from the language of this section, that the lands the title of the claimant to which is thus allowed to be contested, are lands to which the claim has been confirmed. The interposition of the district judge is merely to prevent the patent from issuing, which could only be done after confirmation and survey. If, then, the original order of the supreme court had stood, and the claim been neither rejected nor confirmed, the somewhat embarrassing question would have arisen, whether any petition could be presented under the thirteenth section, there being as yet no final confirmation in favor of any claimant of the lands.

Again, it is open to grave doubts whether the statute was not intended to apply solely to cases of contest between persons holding derivative titles under the same grant; or if it is not to be confined to such cases, whether it can be construed to embrace cases where the contestant claims under a Mexican grant which has never been presented to the board, or which has been finally rejected. It will be observed that no power is given to this court finally to decide between the confirmee and the contestant. The authority given by the section is to be exercised by the district judge, and not by the court. No power to summon jurors, etc., is conferred, and the whole proceeding is shown by the act and proved by the debates of the senate, when it was adopted, to have been intended merely to give the judge authority to stay the issuing of the patent until the questions of private rights could be decided by the ordinary tribunals. The act was even amended in the senate in order that, in deference to constitutional objections, the functions of the judge might be thus limited. If, then, a person who claims under a title which has never been presented, or which has been finally rejected, can enjoin the issuing of the patent to a confirmee under a different grant, and can submit his own title to the state courts for adjudication, those tribunals will take jurisdiction of equitable claims against the United States, which the supreme court has repeatedly declared could not be noticed by any tribunal either state or federal, except those specially authorized to adjudicate them. And they might even review and reverse a final decision of the board, of this, or of the supreme court, by which a particular grant had been declared invalid; or they might take cognizance of a claim which had been barred by the statute. If, then, Miranda can, under the thirteenth section, obtain an injunction staying the issuance of a patent to the claimants under Ortega, (in case they obtain a con-

firmation,) the proceeding must either prove utterly abortive and the injunction be dissolved, because his title to the lands cannot be decided or set up in the state courts; or else those courts will pass upon, and perhaps sustain a claim which has been abandoned before the board, and is barred by 'the statute. It is possible that the supreme court have interpreted the words of the act, "All lands, the claims to which shall not have been presented," etc., "shall be considered part of the public domain," to mean. lands to which no claim has been presented, and that, therefore, if any claim has been presented, though forged and invalid, any person claiming under an entirely different grant, and which has never been presented to the board, may, by some proceeding under the thirteenth section, assert his rights, and procure the judicial recognition of his title. It is only by construing the act in this way that Miranda's rights can, in the present case, be saved. But no such construction of the act of 1851 has ever been adopted by this court, or even suggested at the bar. If such be its true interpretation, it is much to be desired that it may, at an early day, be so declared by the supreme court.

But even on this construction of the law, Miranda can have no right to intervene until the determination of this suit in favor of Ortega; for, as has been already remarked, the lands the title to which the contestant may dispute under the thirteenth section, are lands confirmed to a claimant. If, then, Ortega's claim be rejected, how can Miranda assert his rights in any proceeding under that section? Or how present a petition to the judge, praying an injunction against the issuing of the patent to the claimant when the claim has been finally rejected and no patent can in any event be issued for it? But even if this anomalous and extraordinary proceeding could be had, and by means of it Miranda might establish his title, as against the United States, in a state court, the singular result would occur that a person claiming lands under a Mexican title, whose rights had been lost by his failure to comply with the statute, and whose claim is barred is saved and allowed to assert his abandoned and outlawed claim, merely because some other person has chosen to present a wholly distinct claim for the same, founded on a different grant which has been found to be a forgery or for other reasons invalid. It would seem that no rights to lands, under a Mexican grant, ought to be either saved or lost, by the circumstance that a stranger has seen fit to set up a fraudulent and invalid pretension to the same lands. I have presented these considerations in order that the attention of the supreme court may be drawn to the subject, and in the hope that it may see fit more fully to define and explain the meaning of some of the observations in the opinion referred to, for the guidance and instruction of this court, in these most important cases.

The motion for leave to intervene is denied.

[Upon final hearing the court rejected the Ortega grant. Case No. 16,673. That decree was affirmed by the supreme court. 1 Wall. (68 U. S.) 660.]